IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GULF COAST OIL CORPORATION, | § | CASE NO. 08-50213 |
| | § | |
| CENTURY RESOURCES , INC., | § | CASE NO. 08-50214 |
| | § | |
| NEW CENTURY ENERGY CORP., | § | CASE NO. 08-50215 |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | Jointly Administered Under Case No. |
| | § | 08-50213 |

**SUPPLEMENT AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OBJECTION OF LAURUS MASTER FUND, LTD., TO DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF BROADPOINT CAPITAL, INC., AS FINANCIAL ADVISOR TO THE DEBTORS**

Laurus Master Fund, Ltd., and the entities listed in footnote one below[1] (collectively referred to herein as "Laurus"), hereby respectfully file this Supplement and Request for Judicial Notice (the "Supplement") in support of the Objection of Laurus Master Fund, Ltd. (the "Objection") filed on September 16, 2008 [docket #73] to the above captioned Debtors' Application for Order Authorizing the Employment and Retention of Broadpoint Capital, Inc. (the "Broadpoint Application"), and represents as follows:

**BACKGROUND**

1. On August 27, 2008, the Debtors filed the Broadpoint Application seeking to employ Broadpoint Capital Inc. ("Broadpoint"), as the Debtors' financial advisor.

---

[1] Laurus Master Fund, Ltd., includes any and all affiliates, successors, agents, or assignees to whom it or its affiliates, successors, agents, or assignees has assigned or may assign certain or all of its rights, including Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, PSource Structured Debt Limited, Promethean Industries, Inc., LMF Select Assets, Ltd., Laurus U.S. Fund LP, and LV Portfolio Harvest Offshore SPV I, Ltd.

2. On September 16, 2008, Laurus filed the Objection[2].

3. Laurus hereby files this Supplement in support of the Objection and would show the Court that the fee structure proposed in the Broadpoint Application provides for fees that are much higher than those approved for financial advisors/investment bankers retained in other chapter 11 cases pending in the Northern and Southern District of Texas.  As a result, Laurus does not believe that the Debtors, or Broadpoint, have provided adequate information to enable the Court to find that the fee structure proposed for Broadpoint is reasonable within the meaning of 11 U.S.C. Section 328(a).

## MARKET COMPARISONS

**A.** *In re Osyka Corporation*

4. In the chapter 11 cases of *In re Osyka Corporation*, pending in the Southern District of Texas, Houston Division, case number 08-31467, the debtors (the "Osyka Debtors") are engaged in oil and gas exploration and production businesses as are the Debtors in the above captioned chapter 11 cases.  Attached hereto as **Exhibit "A"** is the Osyka Debtors' Application to Employ Gordian Group, LLC ("Gordian") as Financial Advisors (the "Gordian Application"). Attached hereto as **Exhibit "B"** is the Order Authorizing Employment of Gordian entered by Judge Isgur (the "Gordian Order").  Attached hereto as **Exhibit "C"** is the objection of the United States Trustee to the Gordian Application (the "Trustee Objection").  Laurus would respectfully request that the Court take judicial notice of Exhibits A to C attached hereto pursuant to Federal Rules of Evidence 201.

5. As set forth in the Gordian Application, the assets of the Osyka Debtors are valued at "no less than $90 million."  Exhibit A, Gordian Application, Para. 6.

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Objection.

6. According to the Gordian Application, the Osyka Debtors sought to employ Gordian as financial advisors to assist the Osyka Debtors respecting "a possible sale of their assets or outstanding securities and/or any potential restructuring of the [Osyka] Debtors' indebtedness." Exhibit A, Gordian Application, Para. 8. The proposed compensation structure for Gordian is summarized as follows:

| Monthly Fee | Gordian Success Fee | Other Fixed Fee(s) (other than the Monthly Fee) | Other Terms |
|---|---|---|---|
| $100,000 | • 6% of "Aggregate Consideration" from $67 million to $83 million;<br>• 5% of "Aggregate Consideration" between $83 million to $100 million; and,<br>• 4% of "Aggregate Consideration" in excess of $100 million | None | No Success Fee if existing secured lenders acquires all or substantially all of the Debtors' assets. |

7. The United States Trustee objected to the Gordian Application. The basis of the objection was that the Gordian Success Fee percentages as proposed were above market rates. Exhibit C, Trustee Objection, para. 4. Presumably, as a result of the Trustee Objection, the Gordian Success Fee structure was reduced and the Court approved the employment of Gordian based on drastically reduced Gordian Success Fee percentages as follows:

| Monthly Fee | Gordian Success Fee | Other Fixed Fee(s) (other than the Monthly Fee) | Other Terms |
|---|---|---|---|
| $100,000 | • <u>1%</u> of "Aggregate Consideration" from $67 million to $100 million; and,<br>• <u>2%</u> of "Aggregate Consideration" in excess of $100 million | None | No Success Fee if existing secured lenders acquires all or substantially all of the Debtors' assets. |

8.      The Gordian compensation structure as summarized above would provide far less than the proposed fee structure contained in the Broadpoint Application.  While the monthly fee proposed for Broadpoint is less than the monthly fee approved for Gordian ($90,000 for Broadpoint as opposed to $100,000 for Gordian), the Broadpoint fee structure provides for <u>cumulative</u> fees which, as demonstrated in the example set forth in the Objection, can result in as much as 8% in fees for a transaction with value of $100 million, <u>more than four times</u> the fee percentage approved by Judge Isgur for Gordian.  Furthermore, pursuant to the terms of the Gordian employment, Gordian is <u>not</u> entitled to a Success Fee <u>if the existing lenders</u> of the Osyka Debtors acquire "all or substantially all" of the Osyka Debtors' assets.  In contrast, the Broadpoint fee structure does not provide for such exceptions even if the same scenario occurs - such as if Laurus acquires all or substantially all of the Debtors' assets.

9.      The foregoing shows that the Broadpoint fee structure is clearly above the fee structure approved in the *Osyka* case where the Osyka Debtors are engaged in the same line of business as the Debtors.  Therefore, the Debtors and/or Broadpoint should provide an explanation, or evidence to show, why the fee structure proposed in the Broadpoint Application should be considered reasonable and at market rate under the circumstances.

**B.**     ***In re Heartland Automotive Holdings***

10.     In the chapter 11 cases of *In re Heartland Automotive Holdings* pending in the Northern District of Texas, Fort Worth Division, case number 08-40047, the debtors (the "<u>Heartland Debtors</u>") are one of the largest franchisees Jiffy Lube International.  Attached hereto as **Exhibit "D"** is the Heartland Debtors' Application to Employ Goldsmith, Agio, Helms & Lynner, LLC, d/b/a Lazard Middle Market ("<u>LMM</u>") as the Heartland Debtors' sole investment banker (the "<u>LMM Application</u>").  Attached hereto as **Exhibit "E"** is the Order Authorizing

Employment of LMM (the "LMM Order").  Laurus would respectfully request that the Court take judicial notice of Exhibits D and E attached hereto pursuant to Federal Rules of Evidence 201.

11. The LMM Application provides for compensation to LMM as follows:

| Monthly Fee | LMM Restructuring Fee (include any restructuring, reorganization and/or recapitalization of Heartland Debtors' outstanding indebtedness) | LMM Sale Transaction Fee | Other Terms |
| --- | --- | --- | --- |
| $100,000 | $2,000,000 | $2,000,000, plus 3% of portion of "Aggregate Consideration" in excess of $270 million | In the event of a transaction which constitute both a LMM Restructure and LMM Sale Transaction, LMM would be paid a fee which is higher of two. |

12. As set forth in the LMM Application, the books and records of the Heartland Debtors show assets totaling approximately $334 million and liabilities of $396 million.  Exhibit D, LMM Application, Para. 6.  The Heartland Debtors operate over 400 Jiffy Lube service locations with about 4000 employees.  Id.  Clearly, the Heartland Debtors' estates represent a far more expansive and complex business operation than that of the above captioned Debtors.  Nevertheless, the fees provided for LMM to bring about deals for the Heartland Debtors would provide lower fees to LMM, on a percentage basis, as compared to the proposed compensation for Broadpoint.

13. First, the LMM fee compensation specifically precludes LMM from being able to be paid two types of fees for the same transaction.  The structure provides that LMM would receive either the LMM Transaction Fee or the LMM Restructuring Fee, whichever is higher, in

the event a transaction would trigger both types of fees. Exhibit D, LMM Application, para. 18(d). In comparison, the Broadpoint fee structure specifically provides for Broadpoint to receive every type of fee, cumulatively, described in the Broadpoint Agreement.

14. Furthermore, notwithstanding the much larger size and complexity of the Heartland Debtors' business, the LMM Restructuring Fee of $2,000,000 is only 25% higher than the Restructuring Fee proposed in the Broadpoint Agreement (at $1,500,000). As a result, Laurus is not convinced that a fixed Restructuring Fee of $1,500,000 is an appropriate or reasonable amount given the relatively straightforward nature of the Debtors' business operations. Also, the LMM compensation structure would provide for only $2,000,000 to LMM if the LMM Sale Transaction would result in "Aggregate Consideration" of less than $270 million. At a fixed amount of $2,000,000, assuming that LMM is only able to consummate a transaction with "Aggregate Consideration" of $100 million, the fee LMM is entitled to would be 2% of the value of the transaction (and if the "Aggregate Consideration" is at $270 million, LMM would still be entitled to only $2,000,000, or 0.74%). In comparison, none of the transaction fees proposed in the Broadpoint Agreement is less than 3%. More important, the Broadpoint Agreement would provide Broadpoint with a much higher than a 2% fee given the cumulative effect of the proposed fees.

15. Again, the foregoing summary of the LMM compensation structure shows that the proposed Broadpoint fee structure provides higher fees to Broadpoint than the LMM fee structure. Therefore, the Debtors and/or Broadpoint should provide an explanation, or evidence, to show why the fee structure proposed in the Broadpoint Application should be considered reasonable and at market rate under the circumstances.

C.  *In re Scotia Development, LLC, et al.*

16. In the chapter 11 cases of *In re Scotia Development, LLC, et al.,* pending in the Southern District of Texas, Houston Division, case number 07-20027, the debtors (the "Scotia Debtors") are engaged in business in the timber industry. Attached hereto as **Exhibit "F"** is the Scotia Debtors' Application to Employ Blackstone Group, L.P. ("Blackstone") as Financial Advisors (the "Blackstone Application"). Attached hereto as **Exhibit "G"** is the Order Authorizing Employment of Blackstone entered by Judge Schmidt (the "Blackstone Order"). Laurus would respectfully request that the Court take judicial notice of Exhibits F and G attached hereto pursuant to Federal Rules of Evidence 201.

17. The Blackstone Application provides for compensation to Blackstone as follows:

| Monthly Fee | Blackstone Restructuring Fee | Blackstone Debt Financing Fee | Blackstone Equity Financing Fee | Other Terms |
|---|---|---|---|---|
| $150,000 | $4,150,000 | 2% of total facility size of any debt financing arranged by Blackstone *from lenders who are not currently lenders to the Scotia Debtors* | 4% of total equity secured by Blackstone from *additional third party sources* | Any and all Blackstone Financing Fee and Blackstone Equity Financing Fee will be credited against the Blackstone Restructuring Fee |

18. The Blackstone compensation structure provides that the Blackstone Debt Financing Fee and the Blackstone Equity Financing Fee would be credited against the Blackstone Restructuring Fee. Exhibit F, Blackstone Application, para. 24. In contrast, the Broadpoint Agreement does not provide for any crediting of fees against one another; rather, the Broadpoint fees are cumulative.

19. Not only does the Broadpoint Agreement not provide for crediting of fees against one another, the Broadpoint Agreement also provides for a 6% equity transaction fee as compared to 4% for Blackstone; similarly, the Broadpoint Agreement provides for a 3% debt transaction fee as compared to 2% for Blackstone.

20. Furthermore, the Blackstone compensation structure also provides circumstances where no fee would be earned, that is, no debt or financing fees are earned by Blackstone unless such transactions involve third parities that are not the existing lenders to the Blackstone Debtors.  Exhibit F, Blackstone Application, para. 24.

21. In contrast, the Broadpoint Agreement provides for the same fee structure whether Broadpoint would have earned its fees in the event a restructuring is achieved through the participation of the Debtors' existing lender, Laurus.

## THE BROADPOINT FEE STRUCTURE IS NOT WITHIN MARKET RATES

22. Based on the information obtained from pending chapter 11 cases summarized above, it is apparent that the fee structure proposed in the Broadpoint Agreement does not conform with the fee structures approved in other cases.  As compared to each of the cases discussed above, the Broadpoint fee structure would provide for higher, if not substantially higher, fees to Broadpoint on either a percentage basis, or as compared to the size and complexity of the other debtor estates.

23. Notwithstanding Laurus' objection to Broadpoint's fee structure being above market, Laurus agrees with the Debtors that the services of Broadpoint are necessary and would therefore propose that the Broadpoint's fee structure be revised so that it would be more in line with the current "market" rates.  Allowing Broadpoint to be entitled to above-market high fees is not only unreasonable; it is also not in the best interest for the Debtors and their estates.  The

high fees of Broadpoint would increase the transaction cost for any transaction that Broadpoint may bring to the table. As such, it may result in discouraging some potential interested parties to invest, lend, or otherwise make a deal with the Debtors.

24. At a minimum, the percentage fees provided in the Broadpoint Application should be credited against the fixed $1,500,000 Restructuring Fee if a transaction triggers any of the percentage fees <u>and</u> the Restructuring Fee. The same logic should apply in the circumstance where to the extent a transaction qualifies both as a Financing Transaction <u>and</u> an M&A Transaction, Broadpoint should be entitled to the higher fee only, and not both. Making these changes would make the Broadpoint compensation structure be more in line with fees approved in the cases summarized above.

25. Additionally, concessions should be made in the event Broadpoint fails to bring any third party to the table and the Debtors confirm a plan that leaves Laurus "in" as lender, equity holder, acquirer of assets, or any combination thereof.

As of the filing of this Supplement Laurus has reached out to the Debtors and Broadpoint in an attempt to try and resolve Laurus' Objection consensually.  In the event the parties are unable to reach an agreement, Laurus would respectfully ask that the Court reduce to the fees of Broadpoint to those levels that the Court determines to be reasonable and customary for the services for which Broadpoint is being employed to provide, and grant such other and further relief as is just and proper.

DATED:  September 24, 2008

        WARNER STEVENS, L.L.P.

         /s/ MICHAEL D. WARNER
        _____
        Michael D. Warner (TBN 00792304)
        David T. Cohen (TBN 75008424)
        301 Commerce Street, Suite 1700
        Fort Worth, Texas 76102
        Telephone:  (817) 810-5250
        Facsimile:  (817) 810-5255

        - and -

        **COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.**
        Stuart Komrower (SK-1642)
        Court Plaza North
        25 Main Street
        P. O. Box 800
        Hackensack, New Jersey  07602-0800
        Telephone: (201) 489-3000

        Attorneys for Laurus Master Fund, Ltd., et al.